## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| Aaron S. | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 21-03004-KLM** |
| | ) | |
| Kilolo Kijakazi | ) | |
| Commissioner of Social Security, | ) | |
|     Defendant. | ) | |

### OPINION

**KAREN L. McNAUGHT, United States Magistrate Judge:**

Before the undersigned Magistrate Judge, on consent by the parties, is the action

of plaintiff, Aaron S. ("plaintiff"), [1] for judicial review.[1]

On August 4, 2021, plaintiff filed his Motion for Summary Judgment [15] with

supportive briefing [16], requesting reversal of the Administrative Law Judge ("ALJ")'s

decision denying his claim for disability benefits under Title II of the Social Security Act

("Act"). In response, Defendant Kilolo Kijakazi ("defendant" or "Commissioner") filed a

Motion for Summary Affirmance [21]—requesting affirmance of the ALJ's decision.

Subsequently, the plaintiff filed a reply [22] to the Commissioner's request for affirmance.

For the reasons stated below, this Court hereby orders: (1) plaintiff's Motion for

Summary Judgment be DENIED; (2) defendant's Motion for Summary Affirmance be

GRANTED; and (3) judgment be entered in favor of the Commissioner.[2]

---

[1] *See* 42 U.S.C. § 405(g) (empowering the court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").

[2] References to the pages within the Administrative Record will be identified by R. [page number]. The Administrative Record appears at Docket Entry 11 [Doc. 11].

## I.     BACKGROUND

On November 29, 2018, plaintiff filed his Title II application for a period of disability and disability insurance benefits ("DIBs") — initially alleging an onset date of disability of November 30, 2014, but later amending the onset date of disability to April 1, 2018. (R. 13, 145, 260–66, 277). The application was initially denied on April 15, 2019, and upon reconsideration on August 21, 2019 (R. 13, 166–69, 171–73). Thereafter, plaintiff filed a written request for hearing, which was received on September 6, 2019 (R. 13, 174–75).

On July 21, 2020, the ALJ held a telephone hearing where all participants voluntarily attended, and where both plaintiff and Darrell W. Taylor, Ph.D., a vocational expert ("VE"), testified via telephone at the hearing, without objection. (R. 13, 414). On September 10, 2020, the ALJ issued her decision — concluding plaintiff was "not disabled" for the purposes of his Title II application. (R. 13–27).

As the ALJ outlined, the applicable issues to address in the decision were narrow in scope:

> The issue is whether the claimant is disabled under sections 216(i) and 223(d) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

> With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through June 30, 2019.

> Thus, the claimant must establish disability on or before that date in order
> to be entitled to a period of disability and disability insurance benefits.

(R. 13–14). After outlining the issues on administrative appeal, the ALJ set forth each of

the five-steps of the sequential analysis as enumerated under the Act. (R. 14–15).

At step one of the sequential analysis, the ALJ found the plaintiff met the insured

requirements of the Act through June 30, 2019 ("date last insured" or "DLI") and had not

engaged in substantial gainful activity from the alleged onset date (April 1, 2018) and the

DLI. (R. 18, *citing* 20 C.F.R. § 404.1571).

At step two, the ALJ determined plaintiff suffers from the following severe

impairments: (1) major depressive disorder ("MDD"); (2) generalized anxiety disorder

("GAD"); (3) post-traumatic stress disorder ("PTSD"); (4) attention deficit disorder

("ADD"); (5) obsessive-compulsive disorder ("OCD"); (6) lumbar spine degenerative disc

disease status-post fusion; (7) lumbosacral pain syndrome; (8) lumbar spine

radiculopathy; (9) obesity; and (10) primary insomnia. (R. 16, *citing*

20 C.F.R. § 404.1520(c)).

At step three, the ALJ determined plaintiff's impairments (whether individually

or in combination) did not meet or medically equal the severity of one of the listed

impairments under C.F.R. 20 Part 404, Subpart P, Appendix 1. (R. 16–18, *citing*

20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526).

Between steps three and four, the ALJ formulated the RFC of the plaintiff —

determining the plaintiff is capable of "sedentary work" as defined under applicable

administrative guidance, subject to limited exceptions:

After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a). Specifically, the claimant was able to lift up to ten pounds occasionally. He was able to stand/walk for about two hours and sit for up to six hours in an eight-hour workday, with normal breaks. He was unable to climb ladders/ropes/scaffolds, but was occasionally able to climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. The claimant was limited to jobs that could be performed while using a handheld assistive device, such as a cane, at all times when standing, and the contralateral upper extremity could be used to lift/carry up to the exertional limits. He was unable to tolerate exposure to unprotected heights and use of dangerous moving machinery. He was able to perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes. The claimant was able to tolerate no direct interaction with the public and only occasional interaction with coworkers.

(R. 18–25).

In formulating this RFC, the ALJ notes consideration of all symptoms and the extent to which those symptoms could reasonably be accepted as consistent with objective medical evidence, medical opinions, prior administrative medical findings, or other documentary and testimonial evidence. (R. 19, *citing* 20 C.F.R. §§ 404.1520(c); 404.1529; SSR 16-3p).

At step four, in reliance upon the VE's testimony, the ALJ found plaintiff *could not* perform his past relevant roles through June 30, 2019, the date last insured—including: (1) *Emergency Medical Technician*, DOT #079.374-010, SVP-5, medium work as generally performed, heavy work as actually performed); and (2) *Lubrication Technician*, DOT #915.687-018, SVP-4, medium work as generally and as actually performed. (R. 25, *citing* C.F.R. §404.1565).

At step five, considering the claimant's age (35 years), high school education, work

experience,[3] and RFC as formulated—the ALJ found jobs existed in significant numbers in the national economy that plaintiff could have performed through the date last insured. (R. 25–26, *citing* 20 C.F.R. §§404.1569; 404.1569(a)).

The ALJ found the vocational expert's testimony is consistent with the information contained in the DOT—determining the plaintiff would have been able to perform the requirements of representative occupations such as: (1) *Hand Packer*, DOT #559.687-014, SVP-2; sedentary work; 22,000 jobs nationally; (2) *Production Worker*, DOT #739.687-066, SVP-2; sedentary work; 25,000 jobs nationally; and (3) *Tester/Inspector/Sorter,* DOT #521.687-086; SVP 2; sedentary work; 12,000 jobs nationally. (R. 26, *citing* SSR 004-p; 20 C.F.R. 404.1569; 404.1569(a)).

Upon making this finding at step five, the ALJ concluded that plaintiff was not disabled as defined in the Act, at any time from April 1, 2018, the amended alleged onset date of disability, through June 30, 2019, the date last insured (R. 27, *citing* 20 C.F.R. §404.1520(g)). A Request for Review of the unfavorable decision by the ALJ was submitted to the Appeals Council on October 6, 2020, and received by them on the same date via e-filing. (R. 415–418). On December 4, 2020, the Appeals Council denied the request and adopted the findings of the ALJ. (R. 1–6).

---

[3] Specifically, the ALJ noted how *transferability* of job skills was not material to the determination of disability in this case because using the *Medical-Vocational Rules* as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (R. 25, *citing* 20 C.F.R. Part 404, Subpart P, Appendix 2; SSR 82-41).

## II.    LEGAL STANDARDS

### A. Standard of Review

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. § 405(g)—providing "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Court's review is, therefore, limited in scope—evaluating only whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's findings. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011).

Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 587 U.S. 97, 103 (2019), *quoting Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1983). The reviewing court must consider the entire administrative record, but it will not "re-weigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011). This Court will "conduct a critical review of the evidence" and will not let the Commissioner's decision stand "if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

The Court will focus on whether the ALJ has articulated "an accurate and logical bridge" from the evidence to the determination. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). At a minimum, the ALJ must "sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to

enable] us to trace the path of the ALJ's reasoning.'" *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (per curiam), *quoting Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotations omitted).

This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

### B.  Standard of Proof

To qualify for DIBs under a Title II claim, the claimant must be "disabled" under the Act.[4] A person is disabled for this purpose if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

In determining whether a claimant is disabled, the ALJ must consider the following five-step inquiry: "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he can perform past relevant work, and (5)

---

[4] DIBs regulations are found at 20 C.F.R. §§ 404.900-.999 and 20 C.F.R. §§ 404.1500-.1599.

whether the claimant is capable of performing any work in the national economy." *Dixon*, 270 F.3d at 1176 (listing requirements as set forth under 20 C.F.R. §§ 404.1520 and 404.920).

Although the claimant has the burden of establishing a disability at steps one through four, the burden shifts to the Commissioner at step five to show "the claimant is capable of performing work in the national economy." *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001). If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. *See* 20 C.F.R. §§ 404.1512, 404.1560(c); 404.912; 404.960(c).

## III.    ANALYSIS

On appeal, plaintiff challenges the ALJ's decision only as to his lower back impairment, a physical impairment—setting forth two issues primary issues that warrant remand and reversal. (Doc. 16 at 3). First, plaintiff alleges the ALJ cherry-picked through the evidence in determining the lumbar spine condition was not disabling—arguing the ALJ mischaracterized evidence, failed to adequately articulate her rationale, and neglected the totality of the record. (Doc. 16 at 16–27). Second, plaintiff contends the ALJ unfairly discounting the subjective reports of symptoms—arguing all factors under SSR 16-3p suggest a severe disabling condition. (Doc. 16 at 27–34).

In response, the Commissioner argues the ALJ adequately grounded her analysis in substantial evidence available in the case record. (Doc. 21). First, the Commissioner asserts the ALJ reasonably considered the objective medical evidence in the record— outlining the evidence summarized and evaluated by the ALJ in the decision. (Doc. 21 at

3–8). Second, the Commissioner argues the ALJ reasonably considered opinion evidence from state agency physicians, treating providers, and the vocational expert in formulating the RFC as to lumbar spine limitations. (Doc. 21 at 8–13). Third, the Commissioner argues the ALJ's assessment of the plaintiff's subjective statements was not patently wrong, submitting that more than one factor of evidence relied upon by the ALJ supported the ultimate credibility assessment. (Doc. 21 at 14–16).

In reply, the plaintiff reasserts his positions and narrows his criticisms of the Commissioner to those he considers "most egregious." (Doc. 22 at 1). First, plaintiff suggests the ALJ's improperly considered the physical exam just four (4) days after the major lumbar spinal fusion surgery—suggesting the ALJ's separation of the physical exam from the limitations given on the same day is evidence of the kind of "cherry-picking" the ALJ engages in throughout the decision. (Doc. 22 at 2–3). Second, plaintiff argues the ALJ's characterization of his treatment after the lumbar spinal fusion as "minimal" is belied by the weight of the evidence in the record. (Doc. 22 at 3–6). Finally, plaintiff argues the Commissioner incorrectly conflates the listing of evidence as "consideration" or "discussion" of said evidence. (Doc. 22 at 6–8).

Upon review of the case record, applicable law, and arguments set forth by the parties, this Court finds good cause to affirm the ALJ's disability determination. For the reasons set forth below, remand is unwarranted.

**A.    In determining the severe lumbar spine condition was not disabling, the ALJ adequately cited, discussed, and evaluated record evidence**

The ALJ adequately considered the objective and opinion evidence as articulated below—applying the correct legal standards and building a "logical bridge" between substantial evidence in the record and the ultimate findings as to the lumbar spine condition.

### i.    *Objective Evidence*

As to the objective evidence, the ALJ adequately cited, discussed, and evaluated the relevant record evidence in making the disability determination.

For example, in citing to the April 2018 MRI taken of the lower back near the onset of the disability period, the ALJ considered the moderate to large central disc extrusion—resulting in moderate central canal stenosis. (R. 20, *citing* R. 498–99). The ALJ also relied upon the follow-up, post-discharge from the hospital—noting plaintiff was in no distress, with normal back range of motion, normal strength, normal sensation, and normal reflexes throughout his body. (R. 20, *citing* R. 499).

Plaintiff takes issue with the ALJ's consideration of this initial follow up appointment, but proffers no authority to support the ALJ did so improperly. (Doc. 16 at 19). Plaintiff also takes issue with the ALJ's purported neglect of the discharge instructions in the decision. (*Id*. at 19–20). Yet, the decision reflects the ALJ's consideration of this record, and the precise instructions given to the plaintiff upon discharge. (R. 22, *citing* R. 500). The ALJ discussed these records specifically and the temporary nature of the limitations—including short periods of time ranging between three weeks (no driving), four weeks (strenuous exercise and sex), and two months (heavy lifting,

pushing, pulling with implant-side). (R. 500). In any event, those short-term restrictions, in particular, are unhelpful to an ALJ's analysis. *See O'Brien v. Berryhill*, No. 17 C 0272, 2017 WL 4921960, at *6 n.6 (N.D. Ill. Oct. 31, 2017) (finding no error where ALJ gives "little weight" to the evidence because the work restriction it represented was only temporary and not indicative of long-term functioning).

Further, the ALJ considered that plaintiff had a post-operative infection resulting in a prescription for antibiotics. (R. 20, *citing* R. 638, 650). The ALJ also noted how plaintiff reported that his legs had given out, and the record indicates his neurosurgeon prescribed a cane. (R. 20, *citing* R. 588, 638). Plaintiff alleges the ALJ did not adequately consider the use of this cane or assisted device. *See* Doc. 16 at 22, 24, 26, 30. However, the ALJ did assess need for the use of such an assisted device "at all times when standing." (R. 18). Similarly, despite plaintiff alleging the ALJ should have given more attribution to the 10 pound lifting restriction, it is evident this restriction was expressly adopted by the ALJ in the subsequent RFC formulation. (R. 18).

The ALJ also noted a thin record of treatment history as to the lower back impairment. (R. 20, *citing* R. 728, 807, 815). The ALJ noted that, although plaintiff had tenderness in his lower back he reported as severe at times, he consistently maintained intact sensation, reflexes, and strength through the date last insured. (R. 20, *citing* R. 704, 710, 715, 720, 809, 817, 818). Plaintiff challenges the ALJ's characterization of this treatment history post-surgery as "minimal"; however, in defense of this position, plaintiff merely cites to two follow up appointments—one surgical follow up and one neurology appointment. (Doc. 16 at 20, *citing* R. 638–41, 647–50, 807–10). The record

provides that the ALJ cited and evaluated the records associated to those follow up appointments. (R. 20, *citing* R. 638, 650, 807–10).

Thus, there is no clear indication the ALJ overlooked related medical evidence on the foregoing points of contention. *Dixon*, 270 F.3d at 1178 (finding the ALJ did not take impermissibly selective view of evidence where claimant failed to establish that medical evidence had been overlooked).

Questioning the ALJ's thoroughness in review of the objective evidence further, plaintiff suggests the ALJ ignored an appointment with a pain management specialist in July 2020. (Doc. 16 at 20). Plaintiff fails, however, to establish how the records from this appointment relate to the relevant time frame—as the July 2020 appointment took place more than a year after the DLI of June 2020.  Moreover, plaintiff neglects to address expressly how these records purported to be overlooked by the ALJ support greater limitations that were ultimately adopted in the RFC as formulated.

In further repudiation of the ALJ's assessment, plaintiff submits consideration of his post-surgical examinations by the ALJ showing normal strength and tone were improper because those examinations occurred at psychiatry appointments. (Doc. 16 at 21).  No authority has been provided by the plaintiff in the briefing of the issues that suggests reliance upon a medical doctor's observations (psychiatrist or otherwise) constitutes error. Psychiatrists are medical doctors, and this particular psychiatrist conducted muscle strength, tone, gait, and station examinations. (R.  20, *citing* R. 704, 710, 715, 720). Consideration of these medical records, therefore, was not in error.

Plaintiff has not provided examinations in the record conflicting with the findings

3:21-cv-03004-KLM     # 23    Filed: 11/19/24    Page 13 of 24

of normal strength and tone—a burden that rests with the plaintiff at each of the first four steps of the sequential analysis. *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017). It was not error for the ALJ to rely on the objective findings before her. *Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022) ("The burden of proof is on the plaintiff at steps one through four, but the burden shifts to the Commissioner at step five").

Further, despite contentions by the plaintiff, the ALJ's consideration of the psychiatrist's assessment of plaintiff's physical condition that he walked with a limp or was "disabled" is unpersuasive. (Doc. 16 at 21). The ALJ did not shy away from the uncontroverted fact that the plaintiff walked with a limp or needed a cane at all times at all times in the working environment. (R. 18). The psychiatrist's assessment of the plaintiff as "disabled" is neither dispositive—nor does it hold evidentiary value sufficient to be deferred to under the controlling administrative guidelines. *See* 20 C.F.R. §§ 404.1520b(c)(1)-(3) (2017) (rendering such statements "inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled.").

The ALJ also adequately considered the April 2019 consultation of plaintiff—despite plaintiff's contentions that the ALJ "glossed over" such findings. (Doc. 16 at 22). At the examination, plaintiff presented with and was unable to ambulate without a cane. (R. 20, *citing* R. 690–93, 695). Severe muscle spasms were documented, along with limited lower back range of motion and positive straight leg raise tests. *Id.* Plaintiff was also noted to have fully-body strength and sensation. *Id.* Nothing suggests the ALJ was required to assess this evidence further. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (finding no error where claimant has identified what additional limitations he

Page 13 of 24

believes are supported by the evidence). "It was [Plaintiff's] burden, not the ALJ's, to prove that [he] was disabled." *Summers*, 864 F.3d at 527. Again, mere disagreement with how the ALJ weighed the evidence is not a basis for remand. *See Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012) ("We do not reweigh the evidence or substitute our own judgment for that of the ALJ; if reasonable minds can differ over whether the applicant is disabled, we must uphold the decision under review.").

The "logical bridge" language in the Seventh Circuit is descriptive, "but does not alter the applicable substantial-evidence standard." *Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021). Therefore, this Court opts to defer to the ALJ's well-reasoned assessment in light of the substantial objective record evidence. *See Biestek*, 139 S. Ct. at 1154.

###### ii.    *Opinion Evidence*

The ALJ also reasonably considered the medical opinion evidence available in the case record that suggests plaintiff could perform a range of light exertional work. (R. 21–23) (assessing Neil Patel, D.O. ("Dr. Patel")'s temporary restrictions, William Payne, M.D. ("Dr. Payne")'s work-preclusive opinion, and physician's assistant Melissa Blume ("PA Blume")'s work-preclusive opinion. In the assessment of those opinions, the ALJ also found the examinations conducted by Vittal Chapa, M.D., ("Dr. Chapa") helpful. *Id.* Further, as the ALJ explained, she did not find the prior administrative medical findings by Frank Mikell, M.D. ("Dr. Mikell") and Lenore Gonzalez, M.D. ("Dr. Gonzalez") persuasive—finding the record supported greater limitations. (R. 22, *citing* R. 129–43,

146–61).[5]

As an initial matter, although the ALJ found Dr. Patel's findings persuasive and consistent with the medical record in some respects (such as the lifting limitation), the ALJ also found Dr. Patel's temporary restrictions unpersuasive in formulating the RFC — determining the restrictions given at the follow up appointment were temporary in nature (R. 22–23, *citing* R. 500, 651) (referencing the temporary restrictions limiting certain activities between three weeks to two months in duration). Temporary restrictions have been determined to have little bearing on the question of long-term functional limitations. *See O'Brien*, 2017 WL 4921960, at *6 n.6 (*citing Stepp v. Colvin*, 795 F.3d 711, 719 (7th Cir. 2015) ("Because this assessment and the anticipated date of [Plaintiff's] return to work both predated the alleged onset of [Plaintiff's] disability ... we do not find the assessment particularly probative of [Plaintiff's] condition during the adjudicative period.")).

Plaintiff also argues the ALJ should have credited Dr. Patel's statement that plaintiff was "disabled" for a period of three months (Doc. 16 at 21). However, the ALJ was empowered to dismiss this portion of the record as unpersuasive. Conclusory statements that a claimant is disabled are not "opinions" under the regulations; they are not persuasive and need not even be discussed by the ALJ; moreover, a preclusion from

---

[5] Dr. Mikell and Dr. Gonzalez found that plaintiff could perform a reduced range of light work, whereas the ALJ opted to find the plaintiff was limited to sedentary work during the period of alleged disability. (R. 22). The ALJ's findings were *more restrictive* than those found by Dr. Mikell and Dr. Gonzalez — further supporting the reasonableness of the ALJ's assessment. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) ("This [RFC] finding was more limiting than that of any state agency doctor or psychologist, illustrating reasoned consideration given to the evidence Burmester presented.").

work activities for three months does not establish disability, which requires 12 consecutive months of inability to work. *See* 20 C.F.R. §§ 404.1505, 1520b(c)(1)–(3).

Similarly consistent with the ALJ's discretion in formulating the RFC under controlling administrative guidance, the ALJ was not persuaded by much of Dr. Payne's limitations as they were opined upon. (R. 22–23). Dr. Payne found plaintiff did *not* need a cane or assistive device to walk. (R. 22–23., *citing* R. 422–23). Dr. Payne further opined plaintiff could lift 20 pounds, which contradicted Dr. Patel's opinion. *Id.* Despite that omission, Dr. Payne found the following limitations as relevant: (1) sitting or standing for no more than two total hours per workday; (2) working only part time; and (3) missing three days of work per month. *Id.*

In contrasting the evidence in the record with those limitations as posed by Dr. Payne, the ALJ reasonably considered that opinion as unpersuasive. (R. 22–23). For example, the ALJ explained the record limitations that were different in some respects— *i.e.*, *more limiting* in some respects and *less limiting* in some respects than opined by Dr. Payne, inclusive of the plaintiff's use of an assisted device. (R. 23, *citing* R. 335–42, 498, 588, 604, 692, 729, 809, 818). In consideration of such evidence as cited and adequately discussed by the ALJ in the decision, the Court is no position to find the ALJ improperly weighed such evidence; nor will this Court supplant its own consideration and evaluation of such evidence for that of the ALJ's analysis. *Liskowitz v. Astrue*, 559 F.3d 736, 742 (7th Cir. 2009) (finding that, when "[f]aced with competing opinions, the ALJ had to decide which opinion to credit," and courts "cannot say, as a matter of law, that the ALJ made the wrong choice" in such circumstances).

Likewise, in consideration of the opinion of PA Blume, the ALJ was equally unpersuaded. (R. 23, *citing* R. 759). The record of PA Blume's evaluation indicates check-boxes on a form—indicating plaintiff would miss two or more days of work per month and require unscheduled breaks as a result of the observed physical limitations; however, explanation in support of the opinion was omitted by PA Blume and the ALJ found it inconsistent with the evidence of record showing full strength and sensation, as well as the ability to ambulate with a cane. (R. 23, *citing* R. 498, 682, 704, 710, 715, 720, 729, 809, 817–18). Further, in further skepticism of PA Blume's opinion, the ALJ reasonably discounted the opinion as it was documented six (6) months after the date plaintiff was last insured and failed to relate back to the period at issue. (R. 23). Discounting medical opinions that relate to the period after the date last insured is proper. *See Joe R. v. Berryhill*, 363 F. Supp. 3d 876, 882 (N.D. Ill. 2019) (finding the ALJ appropriately discounts opinions rendered after date claimant was last insured).

Moreover, the ALJ properly evaluated each of the available opinions under the new regulations applicable to applications filed on or after March 27, 2017. *See, e.g.,* 20 C.F.R. § 404.1520c (2017) (explaining how an adjudicator considers medical opinions for claims filed on or after March 27, 2017). The regulations no longer use the term "treating source"; instead, they use the phrase "your medical source(s)" to refer to whichever medical sources a claimant chooses to use. *Id*. The ALJ in this matter did not apply the pre-amendment standard—or the "treating source rule"—that could require deference to treating source opinion evidence. *See* 82 Fed. Reg. at 5853. Rather, consistent with the post-amendment scheme, the ALJ properly evaluated the persuasiveness of the

opinions and prior administrative medical findings under the two most important factors: *supportability* and *consistency*. *See* 20 C.F.R. § 404.1520c(a)–(c).

Specifically, in evaluating a medical opinion or prior administrative medical finding, the ALJ considers several factors—including supportability, credibility, relationship with claimant, specialization, and others. *See generally* 20 C.F.R. § 404.1520c(c). As to the attribution of persuasive weight given to particular medical opinions or prior administrative findings, the most important factors for the ALJ to consider are the *supportability* and *consistency* factors. *See* C.F.R. § 404.1520c(b)(2). In support of her reliance upon particular medical opinions, the ALJ must "explain how [she] considered the supportability and consistency factors" in her evaluation. *Id*.

Under the *supportability* factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *See* 20 C.F.R. § 404.1520c(c)(1). Next, under the *consistency* factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *See* 20 C.F.R. § 404.1520c(c)(2).

The ALJ may, but is not required to, address how any of the remaining factors (relationship with claimant, specialization, and others) were considered when articulating the persuasiveness of the medical opinion. *See* 20 C.F.R. § 404.1520c(b)(2).

The ALJ is not required to articulate how she considered evidence from nonmedical sources. *See* 20 C.F.R. § 404.1520c(d).

Here, using the framework of supportability and consistency to assess the persuasiveness of each opinion, the ALJ reasonably assessed an RFC that was more limiting than found by the state agency physicians. (R. 22–23). This RFC formulation generally aligned with the long-term restrictions found by Dr. Patel, different from those opined by Dr. Payne—in some respects *more limiting*, and in some respects *less limiting*—focusing on the time period of the alleged disability rather than placing weight upon evidence recorded after the relevant DLI. The ALJ's assessment of such opinions under this framework was not, therefore, unreasonable or erroneous.

Plaintiff also argues the ALJ did not adequately rely upon the vocational opinion he procured in relation to a worker's compensation claim. (Doc. 16 at 26–27, *citing* R. 288–301). That opinion, however, is identical to Dr. Payne's opinion that plaintiff would be limited such that he could only engage in part-time work. (R. 288–31). Thus, as was the case of Dr. Payne's opinion, the ALJ's assessment of the vocational opinion related to plaintiff's worker's compensation claim has limited evidentiary value against the totality of the record evidence. *See Simila v. Astrue*, 573 F.3d 503, 520 (7th Cir. 2009) (finding formulation of the RFC and related hypothetical questions need only incorporate those limitations that ALJ accepts as credible).

As relayed above, the administrative guidelines and related precedent suggest the ALJ need not adopt any one doctor's opinion. *Fanta v. Saul*, 848 F. App'x 655, 658 (7th Cir. 2021). Substantial evidence supported the ALJ's assessment of physical limitations at the

relevant stages of the sequential analysis. The substantial evidence and adjoining rationale provided in the ALJ's decision provides more than the minimal articulation necessary to adequately build a "logical bridge" of rationale between the case record, conclusions as to the severity of, and applicable RFC formulated in consideration of the lumbar spine condition. *See Filus v. Astrue*, 694 F.3d 863, 869 (7th Cir. 2012).

### B.  The ALJ's assessment of subjective symptoms was not patently wrong

In challenging the RFC formulation in this case, the ALJ's credibility determination as to subjective statements must be patently wrong, or "at complete odds with what an ALJ must do to support its decision with substantial evidence, a standard that the Supreme Court has emphasized is light." *Warnell v. O'Malley*, 97 F.4th 1050, 1051 (7th Cir. 2024).

Plaintiff contends the ALJ's subjective symptom assessment was sparse — constituting a single paragraph of the written decision. (Doc. 16 at 19, 28). This argument is unpersuasive, however, as it is evident the ALJ considered multiple factors and evidence bearing on the credibility of plaintiff's subjective symptoms consistent with administrative guidance. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019); *see also Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023) ("This explicit weighing is precisely within the purview of the ALJ — and it is not [the Court's] place to reweigh evidence, even where reasonable minds might disagree about the outcome.").

A subjective symptom assessment  is not "patently wrong" if tailored to fit claimant's limitations, even if ALJ does not accept intensity of symptoms to which claimant testifies. *See Green v. Saul*, 781 F. App'x 522, 527 (7th Cir. 2019).  ALJ's are "not

required to discuss every piece of evidence, and that principle applies equally to a credibility assessment." *Sawyer*, 512 F. App'x at 608. Moreover, "[n]ot all of the ALJ's reasons must be valid as long as enough of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722-23 (7th Cir. 2009); *see also Simila*, 573 F.3d at 517 (ALJ's credibility determination need not be "flawless").

Here, although the ALJ did not give full credit to or rely solely upon the subjective symptoms as self-reported by the plaintiff, she did give some credit to such symptoms in formulating an RFC that was more limiting than those previously determined by state agency physicians. (R. 22, *citing* 335–347) (noting the plaintiff's reduced range of *sedentary* work with the use of a cane at all times). The ALJ's subjective symptom assessment was not "patently wrong," merely because she did not accept every symptom or assertion reported by the plaintiff. *See Green*, 781 F. App'x at 526.

In evaluating objective medical evidence and recorded treatment plans against the credibility of other evidence (such as self-reported symptoms), the ALJ must consider the extent to which such "symptoms can reasonably be accepted as consistent with the objective medical evidence." *See* 20 C.F.R. § 404.1529(a); *see also* C.F.R. 20 § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."); 20 C.F.R. §§ 404.1529(c)(3)(iv), (v) (affording discretion to ALJ to consider claimant's treatment as one factor when evaluating subjective allegations); SSR 16-3p ("The intensity, persistence, and limiting effects of many symptoms can be clinically observed

and recorded in the medical evidence. Examples such as reduced joint motion, muscle spasm, sensory deficit, and motor disruption illustrate findings that may result from, or be associated with, the symptom of pain.").

Consistent with such standards, the objective medical evidence in the record was considered by the ALJ and was adequately considered and weighed against plaintiff's subjective statements. As substantively outlined in detail above, the ALJ considered treatment history during the alleged period of disability—both with respect to surgical and nonsurgical consultations relevant to the severe physical impairments of plaintiff. (R. 20, *citing* R. 498–99, 518, 588, 638, 650, 690–692, 695, 704, 706, 710, 715, 720, 728–29, 807–809, 815–819, 836–837). Most notably—consistent with 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v)—the ALJ relied on the unremarkable or "minimal" post-surgery treatment plan as evidenced in the record. (*Id.*, *citing* R. 704, 706, 710, 715, 720, 728–29, 807–809, 815–819, 836–837).

The ALJ also considered daily activities in her credibility assessment—finding such activities support an RFC more limiting than opined by the state agency physicians, but not as limiting as alleged by plaintiff. (R. 22–24). For example, plaintiff's fiancée submitted a form stating that he drove daily. (R. 22, *citing* 323–334). In his function report, plaintiff also acknowledged driving daily, caring for his own hygiene, preparing simple meals daily, using a riding lawn mower, and attending sporting events. (R. 22, *citing* 335–342). These were reasonable considerations in the ALJ's assessment of credibility of the subjective statements by plaintiff. *See* 20 C.F.R. § 404.1529(c)(3)(i); *Green*, 781 F. App'x at 526 ("ALJs are tasked with reviewing the evidence provided and assessing whether a

claimant is exaggerating the effects of her impairments, and reviewing daily-living activities is an important part of that evaluation."); *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) (ALJ properly considered the activities of daily living).

Moreover, the ALJ's RFC formulation or ultimate disability determination in no way equates these daily activities with the ability to maintain full employment. *Cynthia A. v. Berryhill*, No. 4:17-4319, 2019 WL 7421964 at *6 (C.D. Ill. Feb. 8, 2019) (finding no error where ALJ considered activities of daily living, but did not equate those activities with her ability to maintain employment). Instead, the ALJ's consideration of daily activities was one factor in consideration of the totality of the evidence. *See Burmester*, 920 F.3d at 510 (finding the "ALJ did not equate [claimant's] ability to perform certain activities of daily living with an ability to work full time. Instead, [the ALJ] used [claimant's] reported activities to assess the credibility of her statements concerning the intensity, persistence, or limiting effects of [claimant's] symptoms"); *see also Alvarado*, 836 F.3d at 750 (7th Cir. 2016) (finding "it is entirely permissible [for an ALJ] to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated") (citation and internal quotation omitted).

In consideration of the foregoing, therefore, the ALJ adequately considered and balanced the relevant record evidence when assessing the credibility of the subjective statements reported by plaintiff. The ultimate determination is defended with substantial record evidence and, importantly, this Court will not reweigh such evidence.

## IV.    CONCLUSION

Upon review of the filings and applicable law, this Court finds the ALJ applied correct legal standards and supported her decision with substantial evidence in the longitudinal case record. In assessment of the decision and longitudinal case record at each of the sequential stages of evaluation, it is evident to this Court that the ALJ built a "logical bridge" between the available evidence and ultimate disability determination. As the Seventh Circuit recently explained, "the 'logical bridge' language in our case law is descriptive but does not alter the applicable substantial-evidence standard." *Brumbaugh*, 850 F. App'x at 977.  Since substantial evidence in the case record supports the ALJ's determinations at each sequential step of the analysis, this Court affirms of the disability determination. *See Biestek*, 139 S. Ct. at 1154.

For these reasons, this Court hereby orders: (1) plaintiff's Motion for Summary Judgment be DENIED; (2) defendant's Motion for Summary Affirmance be GRANTED; and (3) judgment be entered in favor of the Commissioner.

IT IS HEREBY ORDERED.

ENTER: November 19, 2024

/s/ Karen L. McNaught
KAREN L. McNAUGHT
UNITED STATES MAGISTRATE JUDGE